UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIFTH THIRD BANK,

     Plaintiff,

vs.                             CASE NO.: 8:11-CIV-2206-T-17-TBM

ALAEDIN & MAJDI INVESTMENTS, INC.,
a Florida corporation; ALAEDIN FALASARI;
MAJDI FALASARI; SHIRAZ ORIENTAL RUG
GALLERY, INC., a Florida corporation,

     Defendants.

_____/

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 62)

and Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 63).

This order only addresses summary judgment as to Counts III, IV, and V due to the filing of

bankruptcy by defendants Alaedin & Majdi Investments, Inc. (Doc. 75). For reasons set forth

below, Plaintiff's Motion for Summary Judgment as to Counts III–V is **GRANTED.**

**PROCEDURAL HISTORY**

Plaintiff, Fifth Third Bank ("Lender"), filed its Complaint (Doc. 1) on September 28,

2011 against Defendants Alaedin & Majdi Investments, Inc. ("Borrower"), BioScrip Pharmacy,

Inc., Alaedin Flasiri ("Alaedin"), Majdi Falasiri ("Majdi"), Gerardi Construction, Inc., H.I.S.

Computermation, Inc., Roger Nelson, Pure Healthy Back, Inc., Shiraz Oriental Rug Gallery, Inc.

1

("Shiraz"), WI Acquisition, Inc., and four unknown tenants.[1] That same day, Lender filed its

Notice of Lis Pendens. Lender filed a Motion to Enforce Assignment of Rents (Doc. 5) on

September 30, 2011, which this Court granted on October 18, 2011 (Doc. 8).

Plaintiff filed its Motion for Summary Judgment (Doc. 62) on August 21, 2012. On

September 4, 2012, defendants Borrower, Alaedin, Majdi, and Shiraz filed their Response in

Opposition to Plaintiff's Motion for Summary Judgment (Doc. 63). Plaintiff then filed its Reply

to Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 73) on September

28, 2012.

## STATEMENT OF THE FACTS

The following facts are submitted by the parties in support and/or in opposition to

Plaintiff's Motion for Summary Judgment. The Court recognizes these as "facts" only in regard

to resolution of the pending motion.

Plaintiff Lender is an Ohio banking corporation authorized to conduct business in the

State of Florida. It is a citizen of and has its principal place of business in Ohio. Defendant

Borrower is a Florida corporation. It is a citizen of Florida and has its principal place of business

in Hillsborough County, Florida. Defendant Shiraz is a Florida corporation. It is a citizen of

Florida and has its principal place of business in Hillsborough County, Florida. Defendant

Alaedin is an individual residing in Hillsborough County, Florida and is a citizen of the State of

Florida. Defendant Majdi is an individual residing in Hillsborough County, Florida and is a

citizen of the State of Florida. Plaintiff alleges an amount in controversy in excess of $75,000.00,

and diversity jurisdiction is therefore proper pursuant to 18 U.S.C. § 1332.

---

[1] Defendants Gerardi Construction, Inc., Roger Nelson, H.I.S. Computermation, Inc., WI
Acquisition, Inc., and Pure Healthy Back, Inc. have had defaults entered against them and are not
at issue in the motion for summary judgment. (Docs. 18, 19, 20, 21, 28).

On October 4, 2006, Plaintiff executed and delivered a Promissory Note ("Note") to Lender in the amount of $1,375,000.00. (Ex. A1). The Note was amended on March 26, 2008 with an effective date of January 4, 2008. (Ex. A2). The Note was further amended on June 16, 2008 with the same effective date of January 4, 2008. (Ex. A3). On August 19, 2009, the Note was increased by $244,809.86 and consolidated with the previous Note, bringing the principal amount to $1,619,809.86. (Ex. A4, A5). The Note was then amended and restated on July 31, 2010. (Ex. A6).

Borrower secured the Note in part with a mortgage on real property located at 2100 North Orange Commerce Center ("Mortgaged Property") pursuant to an agreement dated October 4, 2006. (Ex. B). The Note was also secured by an Assignment of Rents, Leases and Profits, allowing Lender to take possession of the Mortgaged Property and demand rents from the tenants. (Ex. C). On October 4, 2006, Alaedin executed a Guaranty ("Alaedin Guaranty") agreeing to pay in full all indebtedness of Borrower as if he was the principal debtor. (Ex. D1). Majdi executed a similar Guaranty on October 4, 2006 ("Majdi Guaranty"), agreeing to pay in full all indebtedness of Borrower as if he was the principal debtor. (Ex. D2). Shiraz executed a Guaranty as well on October 4, 2006 ("Shiraz Guaranty"), agreeing to pay in full all indebtedness of Borrower as if it was the principal debtor. (Ex. D3).

Borrower defaulted on the Note when it failed to make the final payment, which was due on January 3, 2011. On July 19, 2011, Lender delivered a Default Notice and a demand for rents to Borrower, Alaedin, Majdi, and Shiraz. (Ex. E). Between the January 3, 2011 maturity date and the time that Lender filed this suit, Alaedin and Brent Liebler, Lender's Vice President, exchanged numerous communications discussing extending the Note beyond the January 3, 2011 maturity date. (Ex. 2(B)–2(J)). Alaedin requested that Lender extend the Note two years beyond

3

the January 3, 2011 maturity date, but Lender did not agree to a two-year extension. (Ex. 3, at 34–35, 40–41; Doc. 61). Instead, Lender entered into discussions with Defendants about extending the Note's maturity date by a period of one year. (Brent Liebler Supp. Aff. ¶ 8).

Subsequently, Lender brought this suit. There are eight counts in the Complaint. Count I is for mortgage foreclosure. Lender asks that this Court enter a judgment foreclosing the mortgage and all rights of Defendants and all persons claiming an interest in the Mortgaged Property through Defendants, and ordering the Mortgaged Property sold at foreclosure sale if the monies due are not paid when required. Count II is for breach of promissory note. Lender alleges that Borrower owes $1,615,422.84 on the Note and asks that this Court to enter a judgment for damages against Borrower, jointly and severally with each guarantor. These Counts are not considered in this order.

Count III is for breach of guaranty against Alaedin. Lender alleges that Alaedin breached the Alaedin Guaranty by failing to cure Borrower's default under the Note and asks that this Court enter a judgment for damages against Alaedin, jointly and severally with Borrower and every other guarantor. Count IV is for breach of guaranty against Majdi. Lender alleges that Majdi breached the Majdi Guaranty by failing to cure Borrower's default under the Note and asks that this Court enter a judgment for damages against Majdi, jointly and severally with Borrower and every other guarantor. Count V is for breach of guaranty against Shiraz. Lender alleges that Shiraz breached the Shiraz Guaranty by failing to cure Borrower's default under the Note and asks that this Court enter a judgment for damages against Shiraz, jointly and severally with Borrower and every other guarantor. Count VI is for enforcement of assignment of rents. Lender asks that this Court enter an order requiring Borrower to pay over to Lender all previous rents collected, to advise tenants to pay future rents directly to Lender, and to authorize Lender to

use the rents to maintain the Mortgaged Property.[2] Count VII is for appointment of a receiver. Lender alleges that Borrower has allowed the Mortgaged Property to suffer waste and asks that this Court enter an order appointing a receiver. Count VIII is to reestablish a lost note. Lender alleges that the original of the Note has been lost or destroyed and that Lender cannot reasonably obtain possession of the original, and asks this Court to reestablish the lost Note.

Plaintiff's Motion for Summary Judgment concerns Count I for mortgage foreclosure, Count II for breach of promissory note, Counts III–V for breach of guaranty agreements, Count VI for enforcement of assignment of rents, and Count VIII for reestablishment of a lost note. (Doc. 62). Neither Counts VI or VIII are included in this discussion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for its motion for summary judgment and "identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden if it demonstrates "an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this burden, then the nonmoving party must identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

An issue of fact is "genuine" only if a reasonable jury, after considering the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587

---

[2] The Court granted Plaintiff's Motion to Enforce Assignment of Rents on October 18, 2011. (Doc. 8).

(1986). A factual issue is "material" if it might affect the outcome of the trial under the governing substantive law. *Id.* at 248; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259–1260 (11th Cir. 2004). When ruling on a motion for summary judgment, the Court must view all inferences to be taken from the facts in the light most favorable to the nonmoving party. *U.S. v. Diebold*, 369 U.S. 654, 655 (1962). The weighing of evidence, the determination of credibility, and the drawing of reasonable inferences from the facts are all functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if determination of the case rests on deciding which competing version of the facts and events is true, then summary judgment is inappropriate and the case should be submitted to the jury. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). Florida law governs the breach of contract claims in this case. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (providing that federal courts are to apply state law to the case at hand except in matters governed by the United States Constitution or acts of Congress).

## DISCUSSION

I.      **Summary Judgment as to Counts III, IV, and V: Breach of Guaranties**

Under Florida law, a claim of breach of guaranty is a "straightforward state-law breach of contract claim[]." *Reiter Petroleum, Inc. v. Gallant*, 2011 WL 4055392, at *2 (S.D. Fla. Sept. 13, 2011) (quoting *Modern Gaming, Inc. v. Malone*, 2010 WL 724434, at *2 (M.D. Fla. Feb. 24, 2010)). To succeed in a breach of contract claim under Florida law, a plaintiff must show: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Textron Fin. Corp. v. Lentine Marine Inc.*, 630 F. Supp. 2d 1352 (S.D. Fla. 2009) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)).

Alaedin, Majdi, and Shiraz do not dispute that they each executed a guaranty on the Note between Borrower and Plaintiff. (Doc. 61 ¶¶ 3–5). Plaintiff has shown that Defendants breached their respective guaranties by demonstrating that the balance of the Note became due on its January 3, 2011 maturity date (Ex. A6), that Lender delivered the Default Notice on July 19, 2011 (Ex. E), and that Borrower has not cured the default on the Note (Brent Liebler Aff. ¶¶ 11–13). Defendants nevertheless assert that they are not liable under their respective guaranties, and raise the affirmative defenses of waiver, estoppel, and unclean hands.

Defendants assert that Plaintiff waived its right to enforce the guaranties because Brent Liebler, Lender's Vice President, told Defendants that the maturity date of the Note would be extended for one year. (Doc. 63). Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Lender is correct in stating that it did not waive its right to foreclosure by accepting partial payment from Borrower when in default. *Tompkins v. Jim Walter Homes, Inc.*, 656 So. 2d 963, 964 (Fla. 5th DCA 1995). The partial payments did not bring the account current. This does not conclude the matter, as Defendants claim that Lender represented that it would extend the terms of the Note. Defendants, however, have not presented any evidence that Lender voluntarily and intentionally waived its right to collect the amount due under the Note, nor have they shown any conduct on the part of Lender tending to show the same. Lender's Vice President indicated in his affidavit that even though he and Defendants discussed extending the Note's maturity date, no agreement to extend the maturity date had been reached. (Brent Liebler Supp. Aff. ¶ 8). Similarly, Alaedin's deposition indicates that Borrower was not agreeable to a one-year extension of the Note's maturity date, that Lender did not agree to a two-year extension of the

Note's maturity date, and that the parties never came to a conclusion regarding an extension. (Ex. 3, at 67, 71–72, 76).

Defendants also raise affirmative defenses of promissory and equitable estoppel, asserting again that Lender's Vice President promised a one-year extension of the Note's maturity date and that Defendants relied upon this representation. (Doc. 63). The elements of estoppel under Florida law are: "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that position, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004).

Defendants claim that while they were trying to negotiate for a two-year extension, Lender assured them of a one-year extension of the Note's maturity date. (Alaedin Falasiri Aff. ¶ 3). Defendants claim reliance on Lender's assurance of a one-year extension in that they did not seek additional financing or take steps to quickly sell the Mortgaged Property in order to pay off the Note. (Alaedin Falasiri Aff. ¶ 6).

To the contrary, Plaintiff proffers evidence that, based on a supplemental affidavit from Brent Liebler, Lender "did not agree or promise Defendants that it would extend the Maturity Date of the Loan for a period of one (1) year or for any other period of time." (Brent Liebler Supp. Aff. ¶ 8). Plaintiff also points to language in the most recent amended Note (with an effective date of July 31, 2010) in Section 10(d), which states that "[n]o term of this Note shall be changed or modified unless such change or modification is set forth in a written agreement signed by Lender and Borrower." The previous extension of the Note's maturity date from July 31, 2010 to January 3, 2011 was reduced to writing and signed by both parties. (Ex. A6).

Contract provisions providing that any modifications to a loan's terms are valid only if in writing are generally enforceable. *Coral Reef Drive Land Dev., LLC v. Duke Realty Ltd.*, 45 So. 3d 897, 901 (Fla. 3d DCA 2010). Under Florida law, however, subsequent oral modifications are permitted when one party provides additional consideration for the other party's acceptance of the oral modification. *Id.* at 902; *see Davidpur v. Counne*, 972 So. 2d 891, 892 (Fla. 3d DCA 2007) (quoting *Blair v. Howard*, 198 So. 80, 81 (Fla. 1940) (providing that an agreement to extend the time of payment due under a contract must be supported by sufficient consideration and that "sufficient consideration" does not include anything that the debtor is already legally bound to do).

Even assuming that Lender made an oral promise to extend the Note's maturity date, Defendants have not presented evidence showing justifiable reliance on such oral promise. There is no evidence that Defendants offered additional consideration in exchange for Lender's extension of the Note's maturity date. In fact, communication from Brent Liebler to Alaedin Falasiri indicated that extension terms "would also include adding 'new' collateral." (Ex. 2(B)).[3]

---

[3] Defendants argue that the emails included in Plaintiff's Motion for Summary Judgment that were exchanged between Alaedin Falasiri and Brent Liebler between February 28, 2011 and August 3, 2011 are inadmissible settlement offers under Rule 408 of the Federal Rules of Evidence. Rule 408 prohibits introduction of "[e]vidence of [settlement offers] to prove or disprove the validity or amount of a disputed claim," but allows such evidence "for another purpose." Fed. R. Evid. 408. Here, the emails are not used for the purpose of proving or disproving liability, but to determine the existence of an extension agreement. Further, Rule 408 does not come into play unless there is a dispute as to the validity or amount of a claim. *Id.*; *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1354 (11th Cir. 2011). The emails do not concern a dispute as to Defendants' liability under the Note or the amount owed and thus do not fall within the purview of Rule 408. *See eg. id.* (affirming the district court's determination that settlement offers were admissible when the parties did not dispute the debt); *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303 (11th Cir. 1985) (refusing to exclude testimony regarding settlement negotiations when there was no evidence that the parties ever disputed the claim). Further, even if the Court concluded that the emails were inadmissible under Rule 408, Alaedin's deposition similarly indicates that no additional consideration was provided in exchange for an extension of the Note's maturity date beyond January 3, 2011. (Ex. 3, at 44–45).

There is no evidence presented indicating that Defendants accepted this term, and Alaedin indicated during his deposition that Borrower did not offer anything in exchange for a one-year extension of the Note. (Ex. 3, at 44–45). Although Borrower did make partial payments after the Note's maturity date, these payments do not constitute additional consideration because Borrower was already legally obligated to make such payments.

This Court agrees with Plaintiff that there are no genuine issues of material fact in this case. Defendants' affirmative defenses are not well taken. Evaluating all of the evidence in the light most favorable to the non-moving party, this court is able to conclude that Plaintiff has shown that there are no genuine issues of material fact to be submitted to a jury. Accordingly, this Court finds that summary judgment on Lender's breach of guaranty claims is warranted.

## II.   Amount of the Judgment

The total amount owed by Defendants is $2,211,443.20 as of August 3, 2012. This amount is calculated as follows. The principal amount due under the Note is $1,615,422.84. (Brent Liebler Aff. ¶ 14). The total interest owed under the Note is $596,020.36. *Id.* Defendants dispute the total amount under the Note, stating that they "believe that Plaintiff applied default interest from the Maturity Date and should not have." (Alaedin Falasiri Aff. ¶ 7). To survive summary judgment, however, Defendants must point to specific facts that show a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Accordingly it is:

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 62) be **GRANTED** as to Defendants Alaedin Falasiri, Majdi Falasiri, and Shiraz Oriental Rug Gallery, Inc; the Clerk of Court is directed to enter judgment for Plaintiff and against Defendants Alaedin Falasiri, Majdi Falasiri, and Shiraz Oriental Rug Gallery, Inc., joint and severally, in the amount of principal

$1,615,422.84 and interest $596,020.36, for a total of $2,211,443.20 as of August 3, 2012 with the accrued interest from that date; the remainder of the summary judgment motion is moot at this time due to the pending bankruptcy; and the Clerk of Court is directed to administratively close this case pending the outcome of the bankruptcy proceedings as to Alaedin & Majdi Investments, Inc. The trial now scheduled for March 2013 is cancelled. This order does not affect the parties' rights concerning the resolution of any attorney's fees issues.

DONE and ORDERED in Chambers, in Tampa, Florida, this 20th day of February, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All Parties and Counsel of Record